SO ORDERED: March 16, 2015.



_____
Jeffrey J. Graham
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CENTRAL ENGINEERING & | ) | Case No. 13-11739-JJG-11 |
| CONSTRUCTION ASSOCIATES, INC., | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| CENTRAL ENGINEERING & | ) | |
| CONSTRUCTION ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 14-50028 |
| | ) | |
| HOLCIM (US), INC., | ) | |
| | ) | |
| Defendant. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON
<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>**

This matter comes before the Court on Plaintiff Central Engineering &

Construction Associates, Inc.'s *Motion for Summary Judgment* (the "Motion") and

on Defendant Holcim (US), Inc.'s *Cross-Motion for Summary Judgment* (the "Cross-Motion")(together, the "Motions"). Having reviewed the Motions and the supporting materials, the Court hereby issues these Findings of Fact and Conclusions of Law.

### **Findings of Fact**

1. Central Engineering & Associates, Inc. ("Central") was in the engineering and construction business. It bought cement on account from Holcim (US), Inc., ("Holcim").

2. When Central fell behind on paying Holcim for its product, Holcim filed suit. In November of 2011, the Hancock Circuit Court entered summary judgment in favor of Holcim for $81,758.54 (the "Judgment").

3. Holcim then moved for proceedings supplemental and served interrogatories on Star Financial Bank, which placed a hold on Central's account for the full amount of the Judgment. Holcim released its hold on the account in exchange for a $30,000.00 payment and with the expectation that Central had the wherewithal to make a repayment proposal to Holcim.

4. Central was never able to make a repayment proposal and, in June of 2013, Holcim again moved for proceedings supplemental. It served interrogatories on various banks, including the State Bank of Lizton, which placed a hold on Central's accounts at the bank for $6,127.02 and for $96.45. Those funds were released to Holcim pursuant to a final order in garnishment.

5. Prior to the June of 2013 round of interrogatories, Holcim also filed a financing statement (the "Financing Statement") with the Indiana Secretary of

State. The Financing Statement asserts that Holcim has "a lien upon the debtor's personal [property] by judicial proceedings pursuant to the judgment entered judgment entered in the Hancock Circuit Court in Cause No. 30C01-1107-CC-1336, including all inventory, equipment, chat[tel] paper, accounts (including accounts receivable), deposit accounts, contracts, instruments, investment property and general intangibles; whether any of the foregoing is owned or acquired later; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other account proceeds)."

6.   Later in 2013, Central began working with its creditors to conduct an informal, but orderly, liquidation. To that end, Central engaged Ritchie Bros. to conduct a sale of its heavy equipment and other personal property. Before the auction took place, however, several creditors, including Holcim, claimed that they were entitled to secured status, which required that they be paid in full.

7.   Central disputed those claims and filed a voluntary Chapter 11 petition on in an effort to preserve the scheduled sale. Richie Bros. conducted an auction sale on November 15, 2013, and the net proceeds have been held in escrow since the sale pending further order of the Court.

8.   On November 19, 2013, Holcim filed a secured claim in the amount of $82,592.05 based on the strength of its Financing Statement.

3

Central eventually filed the instant adversary proceeding to determine the validity of Holcim's asserted lien.

## Conclusions of Law

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

2.  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). After a party makes a properly supported motion for summary judgment, the nonmoving party may not merely rest upon the allegations in the pleading, but must prove specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

3.  Per its Motion, Central argues that Holcim does not have a valid lien on its personal property notwithstanding Holcim's Financing Statement. In its Cross-Motion, Holcim insists that its lien is valid pursuant to Indiana Trial Rule 63.1(C). For the reasons stated below, the Court agrees with Central.

4

4. Indiana Trial Rule 63.1 is entitled "Lis pendens notice of proceedings avoiding judgment and circumstances tolling and extending statutes of limitations; assignments and discharges in lis pendens and judgment dockets; lis pendens notices involving interests in personal property." Subpart (C) of Rule 63.1 provides:

> **(C) Constructive notice of lis pendens against personal property and rights of lien creditors.** Judicial proceedings brought by a creditor to enforce an unperfected interest in personal property and a lien obtained by judicial proceedings (including tax and other liens through judicial records) in personal property shall not serve as constructive or lis pendens notice thereof until possession is acquired by the creditor or by a court officer, or until notice thereof by the creditor is perfected by filing a financing statement:
>
> (1) naming the defendant as debtor, and the creditor as secured party;
> (2) briefly describing the collateral in such words as a "lien upon debtor's personal property by judicial proceedings" and indicating the kind or type of property, along with the court and cause number of the action;
> (3) signed by the creditor or judgment creditor; and
> (4) in the filing office or offices where a financing statement under a security agreement with respect to the collateral, if filed, would be required to be filed.
>
> Lis pendens notice under this provision is subject to principles of estoppel or commercial law governing negotiable instruments and documents, securities or quasi-negotiable instruments or documents; and to the provisions of Article 9 the Uniform Commercial Code relating to the duration of filing. In an appropriate case the debtor or judgment debtor shall be entitled to a termination statement when judgment in his favor becomes final or when the lien obtained by judicial proceedings is terminated or is satisfied, as in the case of a debtor under a security agreement.

5. On summary judgment, Holcim insists that the above rule "provides a mechanism for a judgment creditor to perfect its lien against personal property in the form of a lis pendens notice." Holcim's argument is fundamentally flawed in

5

that it assumes that Holcim had a lien in the first place by virtue of its Judgment. In the Court's opinion, it did not.

6. Under Indiana law, in order to create a lien upon personality, it is necessary to issue and levy execution. *Muniz v. United States*, 129 Ind.App.433, 440, 155 N.E.2d 140 (Ind.Ct.App.1958); *Rothchild v. State*, 200 Ind. 501, 165 N.E.60 (Ind.1929) ("A judgment without an execution in the hands of an officer authorized to execute it is not a lien on personal property." ). Trial Rule 63.1(C) does not alter these holdings; rather, it simply provides the procedural mechanism to perfect an already existing lien.

7. "'Lis pendens' literally means pending suit. The purpose of lis pendens or notice of lis pendens is to give effective notice to third persons of litigation affecting property . . . ." *Nat'l City Bank v. Shortridge*, 689 N.E.2d 1248, 1252 (Ind.1997).

8. In the Court's view, Indiana Trial Rule 63.1(C) contemplates the filing of a financing statement to serve as lis pendens notice in two scenarios: First, a creditor who has initiated a judicial proceeding to enforce a unperfected interest in personal property may file a financing statement with respect to that property to give lis pendens notice of its alleged interest in the property. That scenario clearly does not apply here, as Holcim was merely an unsecured creditor when it initiated its action against Central; it did not otherwise have an unperfected lien or interest in Central's personal property.

6

9.      Second, Rule 63.1(C) contemplates the filing of a financing statement as a lis pendens notice where the lien in question was obtained through judicial proceedings. For instance, a taxing authority claiming a non-possessory tax lien may file a financing statement under Rule 63.1(C) so as to give third parties notice of its lien rights. *See* 4 Ind. Prac., Rules of Procedures Annotated R. 63.1 (3d ed). Rule 63.1(C) also contemplates the filing of a financing statement as lis pendens notice upon a judgment lien creditor's levy and execution against personal property. *Id*.

10.      The "author comments" to the Indiana Practice Series discussion of Rule 63.1 offers this additional guidance: "[Rule 63.1(C) applies to liens obtained by judicial proceedings. This is important to lawyers and their clients relying upon execution and attachment liens upon personal property not accompanied by possession of the sheriff. The vehicle for perfecting the judicial lien in such cases is subdivision (C)." This is consistent with the Indiana case law cited herein holding that a judgment lienholder does not automatically obtain a lien. It must instead seek levy and execution in order to obtain a lien and to perfect such lien pursuant to Rule 63.1(C).

11.      Holcim did not obtain a lien by virtue of its judgment and, but for the funds garnished in Central's accounts at the State Bank of Lizton, Holcim did not levy and execute on the personal property described in the Financing Statement. As such, the Court can find no basis upon which to conclude that Holcim had a lien, perfected or otherwise, on Central's personal property.

12.     Based on the undisputed facts before the Court, the Court concludes that summary judgment in favor of Central and against Holcim is appropriate. The Court will issue a Judgment consistent with these Findings of Fact and Conclusions of Law contemporaneously herewith.

###